WARNER QUINLAN COMPANY, Appellant, v. BEN CHARAT, INC., Respondent.

Supreme Court, Appellate Term, Second Department, April 19, 1932.

*Herman C. Rubino* [*John Adolph* of counsel], for the appellant.

*William Dower, Jr.*, for the respondent.

JOHNSTON, J. This is an action to recover $562.50, the agreed price and reasonable value of goods sold and delivered. The complaint is framed pursuant to section 255-a of the Civil Practice Act and the schedule contains twelve items.

The answer denies the allegations as to the agreed price and reasonable value of all items and delivery as to five items.

Plaintiff's bookkeeper identified its ledger showing the account and transactions had with defendant between October 1, 1930, and January 2, 1931. She testified to the system which obtained in making the entries in the ledger and said they were posted from delivery slips bearing invoice numbers after the driver made delivery.

The ledger was received in evidence. Plaintiff then rested and the court dismissed the complaint without prejudice.

The sole question to be determined upon this appeal is, did plaintiff make out a *prima facie* case? This necessarily involves the construction of section 374-a of the Civil Practice Act.

It may be helpful to review the history of the " Shop Book " rule which permitted books of account to be received in evidence in this State. It was an exception to the hearsay rule and unknown to the common law. It is not to be confused with the English " Business Entries " rule by which entries made in the regular course of business were admissible upon proof that the entrant was dead. (*Merrill* v. *Ithaca & O. R. R. Co.*, 16 Wend. 586.) Death of the entrant, however, was not a requirement of the " Shop Book " rule. The latter was introduced in this country through the Dutch colonial courts. In those courts merchants and traders were allowed to exhibit their books of account when it was admitted or proved there had been a dealing between the parties — provided the books had been regularly kept with the " proper distinction of persons, things, year, month and day." Upon proof of these prerequisites the account book was admitted as evidence of the charges contained therein. (*Conklin* v. *Stamler*, 8 Abb. Pr. 395; 37 Yale L. J. 245.) At that time parties were permitted to testify in their own behalf and a plaintiff might be sworn and cross-examined with respect to the accuracy of the account.

The rule continued after the English acquired control in the colony. In fact there was then a more urgent reason for it because under the common law which then obtained a party was incompetent to testify in his own behalf and without the aid of the rule a merchant or trader was often unable to prove an account. (See Daly's Historical Sketch of the Judicial Tribunals of New York from 1623 to 1846, p. 16, 1 E. D. Smith, xxx; 37 Yale L. J. 245; *Taggart* v. *Fox*, 11 Daly, 159.)

The practice seems to have continued as late as 1815 when the noted case of *Vosburgh* v. *Thayer* (12 Johns. 461) was decided. In that case the court stated " that the usage and the necessity of admitting such proof, has been *so long sanctioned and felt* in our courts of justice, that it is now too late to question the admissibility of it." The court, however, as a " test and safeguard " required as a condition precedent to the admission of books of account preliminary proof " that the party had no clerk, that some of the articles charged have been delivered, that the books produced are the account books of the party, and that he keeps fair and honest accounts, and this by those who have dealt and settled with

him." The admission of the books under these restrictions was upon the express ground of necessity arising from the disqualification of the claimant to be a witness in his own behalf and the conditions of mercantile and industrial life in the early days. (See *Smith* v. *Rentz*, 131 N. Y. 169, 176; 3 Wigm. Ev. [2d ed.] § 1537.)

Subsequently a party's disability to testify in his own behalf was removed, subject only to the condition that he could not in certain cases testify to personal transactions with deceased persons. Since a party might be cross-examined as to the accuracy of the account, as he was in the old Dutch colonial courts, the necessity for the rule requiring preliminary proof ceased. Nevertheless the rule survived (See *McGoldrick* v. *Traphagen*, 88 N. Y. 334; *Mayor* v. *Second Ave. R. R. Co.*, 102 id. 572; *Smith* v. *Smith*, 163 id. 168; *Swan* v. *Warner*, 197 id. 190; *Litchfield Construction Co.* v. *City of New York*, 244 id. 251) and strict compliance therewith was required. (*State Bank of Pike* v. *Brown*, 165 N. Y. 216.)

Judges and writers frequently pointed out the need for a change in the rule of evidence to meet present business conditions. (See Morgan Law of Evidence [1927], chap. 5; Ehrich Unnecessary Difficulties of Proof [1923], 32 Yale L. J. 436; 37 id. 245; Richardson Evidence, § 266; Wigm. Ev. [2d ed.] § 1530; N. Y. L. J. ed. Oct. 7, 1925.)

This archaic practice continued, however, until 1928, when section 374-a of the Civil Practice Act was enacted. It provides: "Admissibility of certain written records. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term business shall include business, profession, occupation and calling of every kind." (Added by Laws of 1928, chap. 532, in effect Sept. 1.)

In the recent case of *Johnson* v. *Lutz* (253 N. Y. 124) the court pointed out that under modern conditions the limitations upon the right to use books of account frequently resulted in a denial of justice, and said: "A rule of evidence that was practical a century ago had become obsolete." The learned judge writing for the court explained the history and defined the purpose of the statute and

said it was enacted to " afford a more workable rule of evidence in the proof of business transactions under existing business conditions."

The rule in *Vosburgh's* case admittedly was adopted by the court upon the plea of necessity. It is clear the present statute was enacted by the Legislature upon a similar plea. In effect it re-established the practice which obtained in the old Dutch colonial courts with respect to books of account. Under the statute, book entries are admissible if it be found they were made in the regular course of business and that it was the regular course of such business to make them. The court below found the entries in plaintiff's ledger were so made and properly admitted the ledger in evidence.

Respondent contends the proof was insufficient to establish the reasonable value of the goods and to prove delivery.

The ledger shows the kind and quantity of the goods, the price and terms of sale, the invoice numbers and dates of the several transactions.

Under the old rule book entries — once they had hurdled the barriers limiting their admissibility — were treated as original evidence to be weighed like all other evidence in the case. They were considered " as original evidence, and not as hearsay, to establish the fact in question." (*Burke* v. *Wolfe*, 38 N. Y. Super. Ct. 263.) They were admissible to show a sale and delivery of goods. (*Vosburgh* v. *Thayer, supra;* Greenleaf Ev. [15th ed.] § 115; Curtis New York Law of Evidence, § 699; 22 C. J. 862, 876, and cases cited.)

The statute was designed to remove the restrictions created by the old rule upon the right to use books of account, so as to " give evidential credit to the books upon which the mercantile and industrial world relies in the conduct of business." (Report of Legal Research Committee of the Commonwealth Fund.)

The ledger entries constituted evidence within the purview of the statute and coupled with the bookkeeper's testimony that they were posted after deliveries were made, established a *prima facie* case.

The judgment and order should be reversed and a new trial granted.

CROPSEY and MACCRATE, JJ., concur.

Judgment and order unanimously reversed upon the law and new trial granted, with thirty dollars costs to appellant to abide the event.